# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

MELISSA SIMPSON and
SABRINA ROBERTS on behalf of
themselves and all those similarly
situated,

    Plaintiffs,

v.

SANDERSON FARMS, INC., PERRY HAUSER, JEFF BLACK, DEMISHIA CROFT, ARISTIDES CARRAL-GOMEZ, JANIE PERALES, KARINA FONDON, and JENNIFER HARRISON BUSTER,

    Defendants.

Civil Action No. 7:12-CV-28 (HL)

## ORDER

This case is before the Court on the Motion of Sanderson Farms, Inc., Perry Hauser, Jeff Black, Demishia Croft, and Jennifer Harrison Buster to Dismiss Amended Complaint (Doc. 74) and Janie Perales' Motion to Dismiss Amended Class Action Complaint (Doc. 76).[1] For the reasons discussed herein, the motions are granted.

---

[1] The six moving Defendants will be referred to collectively as "Defendants" for purposes of this Order. Defendants Fondon and Carral-Gomez did not file a motion to dismiss.

**I.    BACKGROUND**

On February 16, 2012, Plaintiffs filed a putative class action suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and the Georgia RICO Act, O.C.G.A. § 16-14-1, et seq. Plaintiffs alleged that Defendants have conspired to depress, and have in fact depressed, the wages paid to hourly workers employed at the Sanderson Farms processing facility in Moultrie, Georgia since 2008 by knowingly employing large numbers of illegal aliens and by falsely attesting that the illegal aliens presented genuine work authorization documentation or identification documents.

Defendants Sanderson Farms, Hauser, Black, Croft, and Buster subsequently moved to dismiss Plaintiffs' complaint. On September 13, 2012, the Court entered an order granting the motion to dismiss. (Doc. 65). The Court found that Plaintiffs failed to adequately allege certain RICO predicate acts, specifically violations of 8 U.S.C. § 1324(a)(3)(A) and 18 U.S.C. §§ 1028(a)(7) and (f).[2] The Court went on to dismiss the complaint in its entirety because Plaintiffs failed to sufficiently allege a link between the depressed wages and the false attestations. In other words, the Court found that Plaintiffs failed to establish

---

[2] Title 8 United States Code Section 1324(a)(3)(A) relates to knowingly hiring unauthorized workers who have been brought into the United States. Title 18 United States Code Sections 1028(a)(7) and (f) deal with fraud and related activity in connection with identification documents.

proximate cause. However, Plaintiffs were given leave to file an amended complaint.

Plaintiffs filed their amended complaint on October 5, 2012. (Doc. 66). The amended complaint omits two counts from the original complaint - a federal RICO claim against Defendants Hauser, Black, Croft, and Buster for violations of 18 U.S.C. § 1962(c) and a Georgia RICO claim against Defendants Hauser, Black, Croft, and Buster for violations of O.C.G.A. § 16-14-4(b).[3] The amended complaint also deletes any mention of violations of 8 U.S.C. § 1324(a)(3)(A) and 18 U.S.C. §§ 1028(a)(7) and (f) as RICO predicate acts. Instead, the amended complaint focuses on violations of 18 U.S.C. §§ 1546(a) and (b)(1)-(3), which are RICO predicate acts relating to false attestations and the fraudulent use of documents. The amended complaint also includes a new section entitled "These RICO Violations (18 U.S.C. § 1546) Proximately Caused the Plaintiffs' Wage Depression." (Am. Compl. ¶¶ 62-69).[4]

Defendants have now moved to dismiss Plaintiffs' amended complaint. Defendants contend that Plaintiffs have again failed to show that the alleged false attestations proximately caused depressed wages. Defendants argue that Plaintiffs have not shown any relationship between the alleged false attestations

---

[3] These are labeled Counts V and VI in the original complaint.

[4] There are other variations between the original complaint and the amended complaint, but it is not necessary to address them in this Order.

and wages, or that the wages were depressed. Defendants contend Plaintiffs still have not satisfied Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), as relates to proximate cause.

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the facial sufficiency of a complaint. When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The Supreme Court held in Twombly that

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

550 U.S. at 555 (internal quotations, citations, and alterations omitted). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (quotations and citations omitted). To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570.

4

The Supreme Court went one step further in Iqbal, holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In considering a motion to dismiss, the court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 566 U.S. at 679).

## III. ANALYSIS

To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his business or property; and (3) a causal connection between the racketeering activity and the injury. Avigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (citation omitted). Defendants contend Plaintiffs have not satisfied the third prong of the RICO test.

The third prong requires a civil RICO plaintiff to establish that his alleged injury was proximately caused by the defendant's conduct. Hemi Group, LLC v. City of New York, N.Y., --- U.S. ---, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 462, 126 S.Ct. 1991, 164

L.Ed.2d 720 (2006) (holding that "a claim is cognizable under [18 U.S.C.] § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (same). This means Plaintiffs must show that their injuries were proximately caused by the alleged predicate acts. *See* Anza, 547 U.S. at 461 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.") The Court will again consider whether Plaintiffs have sufficiently alleged under Twombly and Iqbal a link between the depressed wages and the § 1546 violations.

Plaintiffs allege the following in support of their claim that the § 1546 violations proximately caused the wage depression:

> 62.   Sanderson employs over 1,500 hourly workers at its Moultrie Plant, which makes it one of the largest employers in all of Colquitt County, Georgia. In order to hire enough workers to staff the Sanderson Plant and to keep it running, the Defendants must pay the market hourly wage for unskilled labor.
>
> 63.   The supply of unskilled workers includes people who are illegally in the country (and unauthorized for employment) as well as workers who are legally authorized for employment. This market supply of labor (*i.e.*, "the mixed status labor pool") is relatively "*elastic*," in that it is relatively responsive to changes in the level of wages.

64. The market supply of unskilled *legal* labor is relatively unresponsive to changes in the level of wages and is limited. In other words, even with higher wages, there are relatively few additional unskilled *legal* workers available to Sanderson (*i.e.*, the market supply for unskilled *legal* labor is relatively "*inelastic*"). This is contrasted with the mixed status labor pool which is relatively responsive and elastic, *i.e.*, more workers will accept employment at low wages.

65. In order to avail itself of the mixed status labor supply, the Defendants must violate § 1546. The illegal workers must make false attestations and the Defendants must also make their own false attestations (and accept their fake/false IDs) in order to employ them.

66. The wholesale failure to complete I-9 Forms for large numbers of workers at the time of employment on a mass scale would dramatically increase the risk of federal prosecution. This is especially so following the DHS raid at Sanderson in 2008.

67. Therefore, because the Defendants have chosen to avail themselves of the mixed status labor pool, and have chosen to continue to do so even after the 2008 raid by giving the illusion of compliance with federal law, they must routinely violate § 1546 in the manner detailed above.

68. Accordingly, but for the Defendants' violations of § 1546, they would be limited to employing only legal unskilled workers and, therefore, be forced to pay higher wages.

69. As such, the violations of § 1546 are a direct and substantial cause of the depressed wage rates that the Plaintiffs, and the other legally authorized hourly workers at Sanderson, complain [*sic*]. The wages that Plaintiffs and the other legally authorized workers at

> Sanderson would have received had the Defendants not violated § 1546 represent an injury to their business or property, within the meaning of 18 U.S.C. § 1964(c).

(Am. Compl. ¶ 62-69) (emphasis in original).

Defendants argue that there is no factual linkage between the presence of unauthorized workers and allegedly depressed wages. Instead, Plaintiffs have just conclusorily stated that the presence of unauthorized workers causes wage depression. As in their first motion to dismiss, Defendants rely on <u>Walters v. McMahen</u>, 684 F.3d 435 (4th Cir. 2012). There, the plaintiffs also alleged that violations of the false attestation predicate resulted in depressed wages. The Fourth Circuit held that the plaintiffs did not establish that the false attestations depressed wages and affirmed the dismissal of the plaintiffs' complaint.

> The compensable injury resulting from a violation of 18 U.S.C. § 1962(c) necessarily is the harm caused by the predicate acts, which must be related sufficiently to each other that they constitute a pattern. Thus, the RICO predicate acts must not only be a "but for" cause of a plaintiff's injury, but the proximate cause of that injury as well.
>
> In the present case, however, it is not the violation of the false attestation predicate that has caused the harm suffered by the plaintiffs. Rather, the fraudulent use of identification documents and the false attestations placed on the I-9 forms are fundamentally crimes against the government of the United States, and such actions do not directly impact the plaintiffs' wage levels. Although false attestations made by the hiring clerks are one step in a chain of events that ultimately have resulted in the employment of unauthorized aliens by

8

> Perdue, the plaintiffs have not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiffs' wages, or on any other aspect of their compensation.
>
> This deficiency in the plaintiffs' claim becomes obvious by removing the false attestation acts from the plaintiffs' narrative. If Perdue engaged in the hiring of unauthorized aliens without the hiring clerks' fraudulent completion of the I-9 forms, such as by paying the unauthorized employees in cash and not reporting their employment to the United States government, the alleged injury suffered by the plaintiffs would be the same as that stated in the amended complaint. Therefore, as this exercise plainly illustrates, the false attestation violation cannot be a proximate cause of the plaintiffs' injury, because there is no direct relationship between the injury asserted and the predicate act alleged. For this reason, we hold that the plaintiffs' allegations regarding the false attestation predicate are legally insufficient.

684 F.3d at 444-45 (footnote omitted) (internal citations omitted).

Defendants state that Plaintiffs here have similarly failed to demonstrate that the false attestations negatively impacted wages. According to Defendants, Plaintiffs' assertion that false attestations violative of § 1546 are the only means by which unauthorized workers can be employed is dubious, and in any event does not show proximate cause.

Defendants also point to the post-Twombly district court decision in Walters, 795 F.Supp.2d 350 (D.Md. 2011), which was ultimately affirmed by the

Fourth Circuit as outlined *supra*, where the court found that Plaintiffs did not make sufficient allegations to survive a motion to dismiss.

> Additionally, under § 1964(c) a Plaintiff must plead injury to "business or property by reason of" the violation of § 1962(d). Plaintiffs allege that the "hourly wages for the Class . . . are depressed below market levels (the going rate for unskilled labor in the area by employers which do not employ illegal workers)." Am. Compl. § 73. Plaintiffs state no underlying data or figures to support assertion. The complaint states no facts addressing: (1) the wages of any class members (2) the market wage of area employers who do not employ illegal workers (3) how the Plaintiffs can purport to determine which area employers do and do not "employ illegal workers" for purposes of calculating market wages. Plaintiffs, therefore, cannot sustain a claim because they fail to "raise a right to relief above a speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

Id. at 357.

Defendants note that Plaintiffs allege the wages of class members, but argue that the allegations of above minimum wage starting rates followed by significant raises undermine and do not demonstrate injury. Defendants point out that Plaintiffs do not provide information about the market wage of area employers who do not employ illegal workers or how they purport to determine which area employers do and do not employ illegal workers for purposes of calculating market wages. As Plaintiffs do not allege the market wage paid by area employers who do not employ illegal workers, Defendants contend there is no factual basis for any comparison of wage levels or for an inference that

Sanderson's wage levels are below those of unidentified employers of only legal workers. Thus, Defendants argue, Plaintiffs have not made sufficient allegations under Twombly and Iqbal to establish proximate cause and survive the motions to dismiss.

In response, Plaintiffs generally fall back on the same argument presented in response to Defendants' first motion to dismiss - that their pleadings would be deemed sufficient under Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006) ("Mohawk II"). Plaintiffs also again point to Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002), and Trollinger v. Tyson Foods, Inc., 370 F.3d 602 (6th Cir. 2004), cases where similar wage depression complaints have withstood causation challenges. But once again, all of these cases were pre-Twombly and/or Iqbal. They were governed by a different, more lenient standard. The Court will say it once more - those cases simply have little precedential value.

Perhaps it is time for the Eleventh Circuit to revisit Mohawk II in light of Twombly and Iqbal. But that is not for this Court to say. What the Court can say is that in its opinion, Plaintiffs' amended complaint cannot survive the motions to dismiss because it fails to allege sufficient facts to show that the § 1546 violations proximately caused depressed wages. The Court agrees with Defendants that actual data is required to support the wage depression claim. Plaintiffs' statement that "but for" the violations, Defendants would be limited to

employing only legal unskilled workers and, therefore, be forced to pay higher wages is conclusory and not supported by any actual facts. In any event, showing "but for" causation does not carry the day. Plaintiffs must also show some direct relation between the injury and the injurious conduct. The Court must ask "whether the alleged violation led directly to the plaintiff's injuries." Anza, 547 U.S. at 461. Based on the allegations before it, the Court cannot find that the § 1546 violations led to Plaintiffs' injuries, i.e., the depressed wages. At this point, Plaintiffs have not raised a right to relief about a speculative level as required by Twombly. Thus, the amended complaint fails.

### IV.     CONCLUSION

For the foregoing reasons, the Court grants the Motion of Sanderson Farms, Inc., Perry Hauser, Jeff Black, Demishia Croft, and Jennifer Harrison Buster to Dismiss Amended Complaint (Doc. 74) and Janie Perales' Motion to Dismiss Amended Class Action Complaint (Doc. 76).

Plaintiffs, who are represented by counsel well versed in wage depression RICO claims, were given an opportunity to cure the deficiencies in the complaint and failed to do so. Under the circumstances, the Court finds dismissal of the complaint with prejudice appropriate.

**SO ORDERED**, this the 5th day of February, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh